UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TERRY E. WASHINGTON, JR., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| | ) No. 4:11CV777 CAS/NCC |
| | ) |
| JEFF NORMAN, | ) |
| | ) |
| Respondent, | ) |

**REPORT AND RECOMMENDARION**
**OF UNITED STATES MAGISTRATE JUDGE**

This matter is before the court on Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). This matter has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 10). After reviewing the case, the court has determined that Petitioner is not entitled to relief. As a result, the court will recommend that the Petition be dismissed.

**I.**
**BACKGROUND**

Petitioner was charged, by Indictment, with Robbery in the First Degree, a Class A felony, in that between December 24, 2005, at 8:00 a.m. and December 24, 2005, at 8:08 a.m., at 93 North Oaks Plaza, in St. Louis County, Petitioner, Demond Taylor, and Chris Davis, acting together, forcibly stole U.S. currency in the possession of Robert Jordan, agent for National Rent to Own, and in the course thereof Petitioner displayed and threatened the use of what appeared to be a deadly weapon. Petitioner was also charged with armed criminal action in regard to the robbery of Jordan. (Resp. Ex. B at 6-7).

According to the Missouri appellate court, testimony at Petitioner's June 2007 trial was as follows:[1]

> The store manager of the North Oaks National Rent-to-Own location in Normandy (Victim) testified that he was working on the night before Christmas Eve, December 23, 2005. At about 6:55 p.m., two African-American men walked into the store and straight up to the counter, without looking at any merchandise on the sides of the aisle. Victim, who had been standing in his office door, stepped up to the counter, which was located about five feet away from his office. The cash register and valuable items such as jewelry, camcorders and digital cameras were located at the counter. Victim testified that he stood about a foot and a half away from the men and asked them, "May I help you, please? Are you looking for anything in particular?" He said one of the men responded, "No we're just looking." Victim said he stood there for a short time, and then the men turned around and walked straight out, again without looking at any merchandise along the aisle.
>
> Victim testified that he looked at the men face-to-face for more than 10-20 seconds because he had a short conversation with them and because nothing else was going on at the time. He also had observed them as they walked. Victim had observed that the man on his right was wearing a "pure white stocking cap," which stood out because there was no printing, writing or design on it and he had never seen one like this before. The other man on Victim's left had curls all the way around his head, which reminded Victim of Shirley Temple, under a black hat. When the man walked up to the counter, his nose stood out to Victim because it was "really flat and wide," and Victim noticed his large forehead

---

[1] In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1)); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain, 464 U.S. 114, 120 (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id. (citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

because his hat was up high. Victim also testified that the man on the left had really white eyes, was stocky but not fat, and that he stood about the same height as Victim, which was five-feet-ten-and-a-half or eleven-and-a-half inches tall. Victim added that he looked at the men straight on because in his customer-service job, he must make eye contact with the customers to build an "instant relationship."

The next day, December 24, 2005, Victim came into the store at about 7:45 a.m. He sent one of his staff members outside to start the truck and prepare to load it. A few minutes after the store opened at 8:00 a.m., a young African-American woman came into the store looking for a bedroom set. Victim began assisting her, and the woman asked him the price on a bedroom set because there was a scratch on it. Victim turned his back to the woman to look for the scratch but did not see one, and at the time he noticed that she started running. Then Victim noticed the two men that came into the store the previous night. He noticed the one man's smashed nose, stocky body, large forehead, and curls under his black hat, and the other man's pure white hat. He had no doubt that the two men were the same men from the night before because "it just tuck out like a big thumb. I kept the Shirley Temple curls and nose and forehead stuck in my brain because I just seen it yesterday, from the fact they were acting kind of weird coming into the store yesterday." Victim testified that the man with the flat nose and curls had a gun and told him to go to the office. Victim said he immediately put his hands up and walked straight to his office. The man with the gun and flat nose told him to open the safe. Victim obeyed him and put the money on the floor. Then the man with the gun told Victim to give him Victim's wallet and empty Victim's pockets, which Victim did. The man with the gun put into a bag the money from the safe, leaving behind the checks, and Victim's wallet and money. Victim also noticed that he picked up the camcorder and laptop from a chair next to the safe. Next, the men duct taped Victim's hands and eyes and ripped the phone out of the wall. The man with the gun and flat nose told him not to move, and then Victim heard the register's ding and pitter-patter sound. The men took $1296 from the safe, the laptop worth $586, and $150 cash from the register. Victim made his way to the front of the store, freed himself from the duct tape, and called the police.

Victim testified that he typically drives his car to the bank to deposit money from the previous day between 9:00 a.m. and 9:30 a.m. every day. He also testified that the store's security cameras had not been working for two or three weeks at the time of this incident, and that he had informed the store employees of this fact so they would be aware of everything in the store.

Victim testified that he received a phone call two months after the robbery from a young African-American female who told him that she knew who robbed him. She gave him the names of Demond Taylor (Taylor) and [Petitioner], who lived on Hamilton. She also said that she knew that they took a laptop and sold it for $500, that the store's drivers did not start work until 9:00 a.m., and that the

store's security cameras were not working. Victim said the information regarding the laptop stood out because that information was not released, only Victim, the store's district manager, and the police knew that the laptop had been stolen. Victim testified that he knew Taylor's name because he was one of the store's drivers at the time, but testified that Taylor name was not one of the two men that came into the store on either the night of December 23 or morning of December 24, 2005. The anonymous female told Victim that Taylor had set up the robbery because he was mad at Victim and thought that it would be funny. Victim relayed the information about the phone call to the police. Victim testified that during the same month, he went to the Northwoods Police Department to look at a photo lineup. Officer Nidal Othman (Officer Othman) asked Victim to see if he recognized anyone from the robbery. Victim testified that he looked at all the photos and recognized [Petitioner] as the man with the gun from the robbery. Victim said, "I looked straight down to the very first person I looked at because of the nose and the curls. I went right to it." He told the officer he was 98 percent sure that [Petitioner] was the man who robbed him.

(Resp. Ex. E at 2-5).

The court also notes that Jordan testified that during the robbery he was told by the man with the gun to remove his glasses, but he was unable to do so because his hands were taped; the man with the gun grabbed Jordan's glasses and threw them down; the men then placed duct tape over Jordan's eyes. Also, Jordan identified Petitioner in court as the man with the gun. (Resp. Ex. A (Tr.) at 211, 226-28).

Officer Othman's testimony at trial was consistent with Jordan's. Officer Othman further testified that, after Jordan provided police with the information provided by the female caller, officers initiated surveillance of Petitioner but were unable to locate him. About two weeks later, Petitioner turned himself in to the police. After giving Petitioner his Miranda rights, another officer interviewed Petitioner in Officer Othman's presence. Petitioner said he was involved in the robbery with his cousin, Chris Davis, "and it involved cash money and a laptop." Petitioner also told the officers that he had used a fake gun. Petitioner then wrote a "voluntary statement," which Officer Othman read to the jury and which stated the following: "The incident that took place was a robbery which involved money and a laptop that me and my cousin took,

4

my cousin Chris Davis. And I'm trying to get the laptop back in a week." Petitioner told the court that he did not want to testify in his defense. (Resp. Ex. E at 5-6).

Petitioner was convicted, as charged, on June 29, 2007, and the court sentenced him to twenty years in prison. (Resp. Ex. E). Petitioner filed a direct appeal, in which he claimed the trial court plainly erred in allowing Jordan and Officer Othman to testify about what the anonymous caller told Jordan because this violated Petitioner's right to confrontation. (Resp. Ex. C). The Missouri appellate court found Petitioner's claim without merit and affirmed the judgment of the trial court. (Resp. Ex. E).

Petitioner then filed a pro se Motion to Vacate, Set Aside or Correct Judgment or Sentence pursuant to Missouri Rule 29.15. (Resp. Ex. F at 3). Counsel was appointed and filed an Amended Motion, claiming Petitioner was denied his right to due process and received ineffective assistance of counsel because counsel instructed Petitioner not to testify in his own defense. (Id. at 15-40). The motion court denied Petitioner's Rule 29.15 motion. (Id. at 44-49).

In the appeal of the motion court's denial of his Rule 29.15 motion, Petitioner claimed that he was denied due process and received ineffective assistance of counsel based on counsel's advising him not to testify. (Resp. Ex. G). By decision, dated April 6, 2010, the Missouri appellate court found Petitioner's claim without merit and affirmed the judgment against him. (Resp. Ex. I).

On May 2, 2011, Petitioner filed his § 2254 Petition in which he makes the following claims:

**1.** Petitioner received ineffective assistance of counsel because trial counsel failed to strike two jurors;

**2.** The prosecutor engaged in misconduct when he coerced Jordan and Officer Othman, by using the testimony of the anonymous female caller, and by asking Jordan if he thought he was going to be killed;

**3.** The trial court erred in allowing Jordan and Officer Othman to testify about what the anonymous female caller told Jordan; and

**4.** The trial court erred in denying Petitioner's motion pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), and allowing the State to strike jurors based upon race.

(Doc. 1).

## II.
## PROCEDURAL DEFAULT

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotation marks omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Id. at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. Id. at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)). Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default. Id. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986).

Respondent argues Petitioner has procedurally defaulted Grounds 1 through 4, in their entirety. In his Petition, Petitioner incorrectly states that he raised Grounds 1 and 2 both on direct appeal and on appeal from the denial of post-conviction relief. (Doc. 1 at 5-7). Although Petitioner raised the issues of Ground 1 (Petitioner received ineffective assistance of counsel

6

because trial counsel failed to strike two jurors) and Ground 2 (prosecutorial misconduct) in his pro se post-conviction motion (Resp. Ex. F at 12, 14), these issues were not raised in the amended motion filed by appointed counsel (Id. at 30-40). Under Missouri law, claims not included in the amended motion for post-conviction relief are not considered to be before the motion court. See Sweet v. Delo, 125 F.3d 1144, 1151 (8th Cir. 1997) (state prisoners who fail to follow applicable state procedural rules for raising claims are procedurally barred from raising them in federal habeas actions, regardless of whether prisoner has exhausted his state-court remedies); Wills v. Missouri, 321 S.W.3d 375, 386-87 (Mo. App. Ct. 2010). Further, because appellate court review was available for both Grounds 1 and 2, Petitioner's failure to include them in his appeals operates as a procedural bar to this court's considering the allegation of Grounds 1 and 2.[2] See Sweet, 125 F.3d at 1149-50 (to preserve issues for federal habeas review, state prisoners must fairly present his claims to state courts during direct or post-conviction proceedings; failure to raise claims in appeal is abandonment of the claims). Because Petitioner has not suggested cause and prejudice to excuse his procedural default of Grounds 1 and 2, the court finds he has procedurally defaulted these grounds for habeas relief.

Respondent argues that because Petitioner did not raise the claim of Ground 3 (trial court error in allowing Jordan and Officer Othman to testify regarding what the anonymous female caller told Jordan) in his motion for a new trial but raised it on direct appeal for plain error review, he has procedurally defaulted this claim. Respondent cites as authority Walker v. Martin, 131 S.Ct. 1120 (2011) (state's time limitation on applications for habeas relief was independent and adequate state law ground for denial of state habeas petition based on its being untimely). Authority within the Eighth Circuit, however, is mixed in regard to whether a state

---

[2] Petitioner could not have raised his ineffective assistance of counsel claims on direct appeal. See Missouri v. Taylor, 1 S.W.3d 610, 612 (Mo. Ct. App. 1999) (claims of ineffective assistance of counsel are not cognizable on direct appeal).

prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error. The Eighth Circuit acknowledged in Hornbuckle v. Groose that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996)). In Hornbuckle, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error. More recently, in Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error. In Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), however, the Eighth Circuit stated that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error." Because the court finds for the reasons stated below that Petitioner's Ground 3 is not cognizable pursuant to federal habeas review and without substantive merit, the court need not determine whether Petitioner's Ground 3 is procedurally barred. See also, James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999).

Finally, Petitioner states he raised the issue of Ground 4 on direct appeal and in the appeal of the denial of his post-conviction relief motion. (Doc. 1 at 10-11). Petitioner, however, did not raise the issue of Ground 4 (trial court error in denying Petitioner's Batson motion) on direct appeal, although he could have done so, and he has not suggested cause and/or prejudice to excuse his procedural default. The court finds, therefore, that Petitioner has procedurally defaulted Ground 4. See Sweet, 125 F.3d at 1149-50.

# III.
# STANDARD OF REVIEW

"In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under this standard, a federal court may not grant relief to a state prisoner unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent if "the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an unreasonable application of clearly established federal law if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 407-08. Finally, a state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. §2254(e)(1); Ryan v. Clarke, 387 F.3d 785, 790 (8th Cir. 2004).

# IV.
# DISCUSSION

In Ground 3, Petitioner claims the trial court erred in allowing Jordan and Officer Othman to testify about what the anonymous female caller told Jordan. As a preliminary matter,

9

the court notes that the trial court gave the following limiting instruction following Jordan's cross-examination:

> With respect to the evidence you heard about statements that the witness had testified he received from a young girl two months later in February, along those lines, you're instructed that with respect to that information that the witness received from the young girl on the telephone, you are not to consider that for the truth of what was told the witness, but simply that basis for any actions that the witness took in calling the police and that the police later took with respect to that information. But you are instructed specifically that it is not for the truth of the information, just the basis of the actions of the people that may have acted on it.

Upon addressing the issue of Ground 3, the Missouri appellate court held:

Defendant states that he was convicted of robbery in the first degree based on the testimony of three persons, but only two of those persons appeared in court and testified. Defendant argues that the hearsay testimony of the anonymous female caller supported the properly sworn testimony of Victim and Officer Othman, and was the basis of his conviction. Relying on Crawford v. Washington, 541 U.S. 36 (2004) and State v. Douglas, 131 S.W.3d 818, 823-24 (Mo. App. W.D. 2004), Defendant argues that the police officer's trial testimony regarding the statements of the anonymous female caller was inadmissible hearsay because such testimony went beyond what was necessary to explain subsequent police conduct such that the statements were in fact offered for the truth of the matter asserted.

> Hearsay evidence is in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant, State v. Harris, 620 S.W.2d 349, 355 (Mo. banc 1981). However, when in-court testimony relating to an out-of-court statement is offered to explain the conduct of the witness who is testifying rather than as proof of the facts asserted in the statement, the testimony does not constitute hearsay. State v. McCann, 792 S.W.2d 890, 893 (Mo. App. E.D. 1990); State v. Brooks, 618 S.W.2d 22, 25 (Mo. banc 1981) (police officer's testimony of informant's observation properly offered to show police officer's conduct); but see State v. Hoover, 220 S.W.3d 395, 407 (Mo. App. E.D. 2007) (statement to police by defendant's co-conspirator, which the state referenced during its opening statement and was admitted after introduced in police offer's testimony during the state's case-in-chief, was inadmissible) [other citations omitted].
>
> A reasonable concern of this court is the potential for abuse when out-of-court statements are offered into evidence "not for the truth of the matter asserted" but purportedly to explain "subsequent conduct" that removes the statement from constitutional protections set forth in the Sixth Amendment's Confrontation Clause and the Missouri Constitution. . . . . In Hoover, we quoted

the First Circuit in United States v. Maher, 454 F.3d 13, 23 (1st Cir. 2006), stating:

> The dividing line often will not be clear between what is true background to explain police conduct and what is an attempt to evade Crawford and the normal restrictions on (and thus an exception to the hearsay rule an[d] thus an[] exception to Crawford) hearsay. But we are on firm ground in warning prosecutors of the risks they face in backdoor attempts to get statements by non-testifying confidential informants before the jury.

Hoover, 220 S.W.3d at 407.

The testimony regarding the out-of-court statements of the anonymous caller admitted into evidence in this case potentially raises an issue as to whether the evidence of the out-of-court statements was introduced to prove that Defendant committed the robbery as stated by the anonymous caller, or to explain the subsequent actions of the law enforcement officers in conducting a photo line-up and surveillance of Defendant's residence. This case is distinguished from Hoover in that the out-of-court statements of the anonymous caller were offered to explain the subsequent conduct of the law enforcement officers whereas in Hoover the out-of-court statements were offered to explain the subsequent conduct of the defendant. However, we are not required to determine whether or not the out-of-court statements of the anonymous female caller are hearsay because the record before us clear that Defendant was not prejudiced by the admission of such evidence.

Even if the testimony of the anonymous caller's statements was hearsay, reversible error requires prejudice to be shown. Error in admitting evidence is not prejudicial requiring reversal unless it is outcome-determinative. Douglas, 131 S.W.3d at 824. A finding of outcome determinative prejudice expresses a judicial conclusion that the erroneously admitted evidence so influence a jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence. Id. Reviewing all of the evidence before us, we are unable to conclude that the jury would have reached a different conclusion but for the admission of testimony of the anonymous caller's statements. To the contrary, the record before us points to the inescapable conclusion that the jury would have reached the same verdict even if the out-of-court statements had not been admitted into evidence.

Defendant fails to address the fact that his own sworn statement and confession, as well as Victim's detailed identification of Defendant, provided overwhelming evidence of Defendant's participation in the robbery and was determinative of Defendant's conviction. The testimony of the out-of-court

> statements of the anonymous female caller did not buttress the Defendant's written confession of the Victim's extremely detailed in-court identification. Notwithstanding the statements from the anonymous female caller, the State presented evidence to the jury of Defendant's positive identification by Victim, as well as Officer Othman's testimony that Defendant turned himself into the police and made a confession with details of the crime for which he was charged. The anonymous female's remarks were consistent with Defendant's own confession that he and his cousin were involved in the robbery and took cash and a laptop. Therefore, Defendant was not prejudiced by the admission of wholly cumulative testimony regarding the anonymous female's call.
>
> Additionally, the trial court gave a limiting instruction to the jury as a precautionary measure to prevent the jury from using the testimony for its truth. We disagree that the anonymous female's statements somehow provided the essential link between the robbery and Defendant. The essential link, in our mind, was Defendant's own confession and the Victim's detailed identification of Defendant, rather than any information provided by the anonymous caller.
>
> Accordingly, we conclude that the admission of the testimony in question, whether or not hearsay, was not outcome-determinative and was harmless beyond a reasonable doubt under the circumstances of the case. We find beyond a reasonable doubt that Defendant would have been convicted even if Victim and Officer Othman had been prevented from testifying about the anonymous female's statements. In order to justify relief, Defendant must show that the trial court committed evidence, obvious and clear error that affected his substantial rights, and that such error was a manifest injustice or a miscarriage of justice. Cohen, 145 S.W. at 864. Here we find that Defendant proved neither. Defendant's point is denied.

(Resp. Ex. E at 8-12).

First, the Supreme Court held, in Estelle v. McGuire, that "'federal habeas corpus relief does not lie for errors of state law'" and that "it is not province of a federal habeas court to reexamine state-court determinations on state-law questions." 502 U.S. 62, 67-68 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990) and citing Pulley v. Harris, 465 U.S. 37, 41 (1984)). The Court further held that "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Id. at 68 (citing 28 U.S.C. § 2241; Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam)). Because the admission or exclusion of evidence is primarily a question of state law, an

evidentiary determination rarely gives rise to a federal question reviewable in a habeas petition. See Scott v. Jones, 915 F.2d 1188, 1190-91 (8th Cir. 1990). Federal courts "may not review evidentiary rulings of state courts unless they implicate federal constitutional rights." Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004). "[O]nly the exclusion of critical, reliable and highly probative evidence will violate due process." Nebinger v. Ault, 208 F.3d 695, 697 (8th Cir. 2000). "The admission of evidence at a state trial provides a basis for federal habeas relief when the 'evidentiary ruling infringes upon a specific constitutional protection or is so prejudicial that it amounts to a denial of due process.'" Abdi v. Hatch, 450 F.3d 334, 338 (8th Cir. 2006). As stated by the State court, Jordan's identification of Petitioner and Petitioner's admissions provided sufficient evidence to establish that, absent the admission of the allegedly objectionable testimony, the jury would have found Petitioner guilty. Thus, it cannot be said that the admission of the testimony infringed upon a specific constitutional protection or that it was so prejudicial that it amounted to a denial of due process. Therefore, to the extent the Missouri appellate court relied on State law when determining that any error in regard to the jury's hearing what the anonymous woman told Jordan was harmless, the court finds that Ground 3 is not cognizable pursuant to federal habeas review. See Estelle, 502 U.S. at 67-68.

Second, in Crawford v. Washington, the United States Supreme Court held that states had the liberty to adopt their own laws concerning non-testimonial hearsay, but that the Confrontation Clause governed the admissibility of testimonial statements. 541 U.S. 36, 68-69 (2004) ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law."). In Crawford, the Court clarified the relationship between the Confrontation Clause and hearsay, in that it noted that the core concern of the Confrontation Clause is formal out-of-court statements by witnesses

to law enforcement investigators for later use in court. Id. at 51-53. The Court has also held that non-testimonial statements, "while subject to traditional limitations upon hearsay evidence, [are] not subject to the Confrontation Clause." Davis v. Washington, 547 U.S. 813, 821 (2006). Indeed, the Eighth Circuit has specifically held that non-testimonial hearsay is admissible in circumstances where it explains the conduct of witnesses. See e.g., United States v. Honken, 541 F.3d 1146, 1161 (8th Cir. 2006) (maps drawn by defendant's girlfriend which led investigators to murder victims' bodies were non-testimonial and not subject to Confrontation Clause). Moreover, the Eighth Circuit holds that, even if evidence is admitted in violation of the Confrontation Clause, on appeal, the court will consider whether the error was harmless beyond a reasonable doubt. Id. at 1159. The Missouri appellate court considered the evidence and determined that any error, in regard to the objectionable admission of evidence, was harmless. This court finds, therefore, that the decision of the Missouri appellate court regarding Petitioner's claim that Jordan's and Officer Othman's testimony about what the anonymous female caller told Jordan is not contrary to federal law and is a reasonable interpretation of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. See Williams, 529 U.S. at 407-408, 413. As such, the court finds that Petitioner's Ground 3 is without merit and that habeas relief on its basis should be denied.

## V.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner is not entitled to federal habeas relief. Furthermore, Petitioner has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). Thus, the Court will not

recommend a certificate of appealability issue or that in forma pauperis be granted on appeal. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY RECOMMENDED** that Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 be **DENIED**, and **DISMISSED** (Doc. 1);

**IT IS FURTHER REOMMENDED** that no certificate of appealability should issue and in forma pauperis not be granted on appeal. 28 U.S.C. § 2253.

The parties are advised that they have to and including **August 13, 2014,** in which to file written objections to these recommendations pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Dated this 30th day of July, 2014.

/s/Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE